[No. 12643–1–I.   Division One.   June 6, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. GENE THOMPSON McDANIEL, *Appellant.*

*Shafer & Moen, P.S.,* and *Steve Moen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Deputy,* for respondent.

CORBETT, J.—Defendant, Gene Thompson McDaniel, appeals his judgment and sentence after a jury verdict of guilty of statutory rape and indecent liberties. We reverse and remand for a new trial.

The victim, who was 9 years old at the time of the trial, had resided in an apartment building managed by the defendant. She testified that she had engaged in "french kissing" with the defendant, that while her clothes were off the defendant had touched her vagina with his mouth, hands, and penis, that when he touched her with his penis it hurt, and that this had happened more than one time. She testified that these incidents had taken place in the defendant's apartment, in the storage room in the apartment building, and in the victim's home. On cross examination, the victim testified that she had looked at her parents' pornographic magazines and had talked about her acquaintances being raped. She denied telling anyone that her stepfather took pictures of her nude or sexually molested her. On redirect, the victim testified that an unknown man once inserted his finger in her vagina.

A physician testified that she had examined the victim

and concluded that the victim had been sexually abused. The doctor testified that the degree of dilation of the victim's hymenal opening was not consistent with repeated sexual intercourse with an adult male, but was not inconsistent with a single incident of digital penetration. The doctor also testified over objection that the victim indicated the defendant had touched her vaginal area with his finger and penis and also had kissed her in the same area.

A Children's Protective Services caseworker testified over objection that during an investigative interview, the victim stated that the defendant "would pull her panties down, touch her in the vagina, insert his finger and that it hurt. That he would make her do oral sex kinds of things to him . . . ."

The victim's aunt testified over objection that the victim told her that the defendant touched her in her "private areas" and made her kiss him.

Defendant denied that the alleged events occurred, and called several witnesses who related statements by the victim that she had been raped or molested by an unknown man, that her stepfather liked her to pose nude, and that she hated the defendant because he was involved in a Children's Protective Services proceeding in which the victim and her brother were removed from their parents' home. The witnesses also testified that they observed many pornographic magazines and books in the victim's apartment and observed the victim reading a pornographic magazine with friends in the apartment manager's office.

Defendant assigns error to admission of testimony by the caseworker, the physician and the aunt relating statements made by the victim concerning the alleged incidents. He contends that the testimony was hearsay and should have been excluded pursuant to ER 802. The trial court admitted the testimony of the caseworker and the aunt as prior consistent statements under ER 801(d)(1)(ii),[1] and the tes-

---

[1] "(d) **Statements Which Are Not Hearsay.** A statement is not hearsay if—

timony of the physician under ER 803(a)(4).[2]

■■ Prior out–of–court statements consistent with the victim's testimony are not admissible to reinforce or bolster the testimony of the victim. *Thomas v. French,* 99 Wn.2d 95, 103, 659 P.2d 1097 (1983). Repetition generally is not a valid test of veracity. *State v. Harper,* 35 Wn. App. 855, 670 P.2d 296 (1983).

> Evidence which counteracts a suggestion that the witness changed his story in response to some threat or scheme or bribe by showing that his story was the same prior to the external pressure is highly relevant in shedding light on the witness' credibility. Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force "for the simple reason that mere repetition does not imply veracity."

(Footnotes omitted.) 4 J. Weinstein, *Evidence* ¶ 801(d)(1)-(B)[01], at 117 (1981), quoted with approval in *State v. Harper, supra* at 858. There was no showing that the victim's consistent statements were made at a time when the motive to falsify was not present. Evidence which merely showed that the victim made similar statements to the caseworker and aunt was of little probative value and should not have been admitted as prior consistent statements. The evidence was not admissible under ER 801(d)(1)(ii). It cannot be said that admission of the testimony was harmless error. The victim's veracity was severely challenged. The questions to her were somewhat leading, and her specificity as to the offense was not as

---

"(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . ."

[2] "(4) *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

clear or succinct as stated by the caseworker. We cannot say that the outcome of the trial was not materially affected by the improperly admitted evidence. *Cf. State v. Ellison,* 36 Wn. App. 564, 570, 676 P.2d 531 (1984).

The physician's testimony relating statements by the victim was properly admitted under ER 803(a)(4).

Defendant also assigns error to denial of his motion to dismiss the statutory rape charge on the basis of insufficient evidence. Defendant contends that the child's testimony only established sexual contact, and not penetration or mouth to sex organ contact.

█ Sexual intercourse is defined by statute:

(1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

RCW 9A.44.010, in part. Viewing the testimony of the victim and the examining physician in the light most favorable to the State, a rational trier of fact could have found the elements of sexual intercourse. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). The court did not err by denying the motion to dismiss.

█ Finally, the defendant assigns error to admission of testimony by the victim's mother that the defendant's son had made a threatening gesture toward her during a court recess. The son had testified on behalf of the defendant concerning the relationship of the defendant and the victim's mother. The State offered the testimony of the mother to show bias of the witness. Even though collateral, the evidence was admissible. *State v. Jones,* 25 Wn. App. 746, 751, 610 P.2d 934 (1980). Bias may be shown by the

witness' conduct. 5 K. Tegland, Wash. Prac., *Evidence* § 225, at 463 (2d ed. 1982). Although the issue is unlikely to arise on retrial, we find no error in admission of the mother's testimony to demonstrate bias of the witness. Because of the error in admission of the caseworker's and the aunt's testimony relating alleged statements of the victim, we reverse and remand for new trial.

DURHAM, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied September 6, 1984.

Review granted by Supreme Court December 7, 1984.